**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CANTIUM, LLC**                                         **CIVIL ACTION**

**VERSUS**                                               **NO. 25-552**

**WALKER MARINE GEOPHYSICAL**            **SECTION "B" (3)**
**COMPANY, LLC, ET AL**

**ORDER AND REASONS**

Before the Court are defendant GTC, Inc.'s ("GTC") Motion to Stay Under the Federal Arbitration Act (Rec. Doc. 31), Cantium, LLC's ("Cantium") Opposition (Rec. Doc. 41), GTC's Reply in Support (Rec. Doc. 44), the Joint and Unopposed Consent Motion to Vacate Trial Date, Scheduling Order, and Set Status Conference (Rec. Doc. 65), and the Joint and Unopposed Consent Motion for Expedited Consideration of Rec. Doc. 65 (Rec. Doc. 66). For the following reasons,

**IT IS ORDERED** that GTC's Motion to Stay under the Federal Arbitration Act (Rec. Doc. 31) be **GRANTED**, and **IT IS HEREBY ORDERED** that the above-captioned case is **STAYED**, and for statistical purposes only, **ADMINISTRATIVELY CLOSED** without prejudice to the parties' rights to reopen the case after the conclusion of arbitration proceedings or once the stay is lifted or otherwise modified giving the parties permission to proceed with litigation, provided good cause is shown in motion to reopen.

Subject to a showing of good cause, **IT IS FURTHER ORDERED** that no later than thirty (30) days after the conclusion of arbitration, the parties shall file either a motion to reopen plaintiff's claims against defendants and set a preliminary conference, or a joint motion to voluntarily dismiss all claims against defendants. **FAILURE TO TIMELY COMPLY WITH THIS ORDER MAY LEAD TO SANCTIONS, INCLUDING DISMISSAL OF PETITION OR DEFENSES, WITHOUT FURTHER NOTICE.** *See* Fed. R. Civ. P. 41(b).

1

**IT IS FURTHER ORDERED** that the Joint and Unopposed Consent Motion for Expedited Consideration of Rec. Doc. 65 (Rec. Doc. 66) be **GRANTED**, and the Joint and Unopposed Consent Motion to Vacate Trial Date, Scheduling Order, and Set Status Conference (Rec. Doc. 65) be **GRANTED** in part and **DENIED** in part. Given the Court's order to **STAY** and **ADMINISTRATIVELY CLOSE** the above-captioned matter, the pending pretrial and trial deadlines in this case are **VACATED**. However, the request for a status conference is **DENIED**, and may be reurged for good cause following the parties' completion of arbitration.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Cantium is a Louisiana-based oil and gas company that "is in the business of the exploration, development, and sale of oil and natural gas in the Louisiana and federal offshore waters." Rec. Doc. 1 at 4. On March 10, 2023, Cantium entered into an agreement with Walker Marine–a marine seismic survey company–whereby Walker Marine would provide marine seismic surveying services, personnel, and equipment to Cantium ("Cantium-Walker Marine Agreement"). *Id*. On July 19, 2023, Walker Marine and GTC entered into the Master Equipment Rental Agreement ("Master Agreement"), pursuant to which Walker Marine would rent marine seismic survey equipment from GTC, with specific rental transactions documented in separate addendums to the Master Agreement. Rec. Doc. 1-3 at 1. The Master Agreement includes an arbitration provision, which states that "[a]ll disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Court of Arbitration (ICC)." *Id*. at 10. Cantium did not sign the Master Agreement.

On August 3, 2023, Cantium, Walker Marine, and GTC entered into an agreement, titled "Addendum to Master Equipment Rental Agreement" ("Addendum"). Rec. Doc. 1-2. The Addendum provides "additional terms and conditions" concerning the rental of survey equipment, and further states that in the event of Walker Marine's failure to fulfill its obligations under the

Master Agreement, Cantium (as Walker Marine's client), had "the right, not the obligation, to assume all [Walker Marine's] interest under the Master Agreement and this Addendum" if it provided GTC with thirty (30) days' notice. *Id*. at 3. On October 8, 2024, Cantium, Walker Marine, and GTC entered into a separate agreement, titled "Amendment No. 1 to Master Equipment Rental Agreement" ("Amendment No. 1"), which likewise included "additional terms and conditions" concerning the rental equipment. Rec. Doc. 31-3 at 2. The Addendum and Amendment No. 1 clarify that capitalized terms in each agreement would have the meaning ascribed to those same terms in the Master Agreement. Rec. Docs. 1-2 at 1; 31-3 at 2. Both contracts also refer to the Master Agreement multiple times throughout each document, highlighting relevant substantive provisions of that initial agreement.

By October 2, 2024, GTC began providing rental equipment and services under the Master Agreement and Addendum. Rec. Doc. 1 at 9. Through December 31, 2024, Cantium paid Walker Marine $4,319,675.38 for invoiced services and equipment, a portion of which Walker Marine was to pay to GTC. *Id*. However, Cantium alleges that Walker Marine failed to pay GTC any amounts owed to GTC under the Master Agreement and the Addendum. *Id*. Further, Cantium alleges that Walker Marine has failed to comply with its obligations under the Cantium-Walker Marine Agreement by providing ineffective or inoperable equipment, failing to communicate important details about the survey project, and relying on inadequate personnel to fulfill its obligations. *Id*. at 9–11. On January 20, 2025, Cantium formally terminated the Cantium-Walker Marine Agreement. *Id*. at 11. Additionally, in January and February 2025, Cantium began communicating with GTC regarding the retrieval of certain equipment that GTC had rented to Walker Marine. *Id*. at 11. Cantium asserts that it never issued notice that it would take over as the "lessee" as it had the right, but not the obligation, to do so pursuant to the Addendum. *Id*. Despite Cantium's

assertion that it never took over as lessee, in February 2025, GTC notified Cantium that [w]e believe Cantium has assumed the role of Lessee in the rental addendum and as a result is responsible for all invoices rental and serviced covered under the addendum before and after January 19, 2025." *Id*. at 12.

On March 3, 2025, Cantium sued Walker Marine and GTC. Against Walker Marine, Cantium asserts claims for breach of contract and detrimental reliance. Against GTC, Cantium requests declaratory judgment that it did not provide notice to GTC that it would become the lessee pursuant to Section 7 of the Addendum. GTC has moved to stay the above-captioned matter, arguing that Cantium's declaratory judgment against it must be arbitrated. Cantium opposes the motion to stay because it did not sign the Master Agreement which contains the relevant arbitration clause.

## II.   LAW AND ANALYSIS

### A.  Standard

Under Section 3 of the Federal Arbitration Act ("FAA"), a district court must stay a lawsuit when a party demonstrates that any issue involved in the lawsuit is "referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. This provision is mandatory and demands that a district court stay legal proceedings "whenever the issues in a case are within the reach of an arbitration agreement." *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993). Under these circumstances, a district court "has no discretion under section 3 to deny the stay." *Id*.

Generally, "only parties to an arbitration agreement are bound by that agreement." *Cure & Assocs., P.C. v. LPL Fin. LLC*, 118 F.4th 663, 669 (5th Cir. 2024) (citing 9 U.S.C. § 2). However, under the FAA, "traditional principles of state law may allow an arbitration contract to be enforced by or against nonparties to the contract through a number of state-contract-law theories, including

equitable estoppel." *Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 255 (5th Cir. 2014). Under both Texas and Louisiana law, there are several state law principles that could bind nonparties to arbitration agreement, including: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, (5) estoppel, and (6) third-party beneficiary. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003); *see also Traders' Mart, Inc. v. AOS, Inc.*, 268 So.3d 420, 427 (La. App. 2d Cir. 2019) (recognizing same under Louisiana law); *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 634–640 (Tex. 2018) (recognizing same under Texas law).

Importantly, while doubts must be resolved in favor of arbitration, the "federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties" or to "the determination of who is bound" by an arbitration agreement. *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, X (5th Cir. 2003).

### B. Analysis

Cantium was not a party to the Master Agreement which contains the arbitration clause. Cantium, however, was a party to, and signed, the Addendum and Amendment No. 1 which indisputably references the Master Agreement. At issue is whether Cantium must arbitrate its declaratory judgment action against GTC despite not signing the Master Agreement. The Court holds that it must because the Master Agreement is incorporated by reference in the Addendum and Amendment No. 1.[1] Further, because the arbitration clause is valid, enforceable, and covers the dispute at issue here, the above-captioned matter must be stayed pending arbitration pursuant to the FAA.

---

[1] GTC also argues that Cantium can be bound to the arbitration clause because of the state law doctrines of third-party beneficiary and direct benefits estoppel. Rec. Doc. 31-1. However, because the Court finds that Cantium is bound to the clause because it was incorporated into the Addendum and Amendment No. 1, the Court need not consider these additional arguments.

1. *Incorporation by Reference*

An unsigned document can be incorporated by reference into a separate, signed, document. *Russellville Steel Co. v. A&R Excavating, Inc.*, 624 So. 2d 11, 13 (La. Ct. App. 1993) This rule even allows for the incorporation of arbitration clauses. *Id*; s*ee also LDF Constr., Inc. v. Texas Friends of Chabad Lubavitch, Inc.*, 459 S.W.3d 720, 728 (Tex. App. 2015) ("A valid agreement to arbitrate exists when a signed contract incorporates by reference another document containing the arbitration clause."). This rule "applies even when the document containing the arbitration agreement is unsigned." *Id*. However, "plainly referring to a document requires more than merely mentioning the document." *Bob Montgomery Chevrolet, Inc. v. Dent Zone Companies*, 409 S.W.3d 181, 189 (Tex. App. 2013). That said, if the reference to the other document is "clear and the circumstances indicate that the intent of the parties was incorporation," a document may be incorporated "even in the absence of specific language of incorporation." *Al Rushaid v. Nat'l Oilwell Varco, Inc*., 757 F.3d 416, 420 (5th Cir. 2014). There is likewise no requirement that "the signed contract specifically refer to the arbitration clause for the clause to be enforceable." *LDF Constr., Inc.*, 459 S.W.3d at 729.

Circumstances indicate that the parties intended to incorporate the Master Agreement into the Addendum and Amendment No. 1. First, Section 3 of Master Agreement states that each addendum to the Master Agreement "shall be governed by the terms and conditions of this Agreement[.]" Rec. Doc. 1-3 at 1. Second, both the Addendum and Amendment No. 1 note the provisions contained therein provide only "additional terms and conditions"; presumably, these terms and conditions are additional to those included in the Master Agreement. Third, the Addendum and Amendment No. 1 reference the Master Agreement at least ten (10) times each, detailing specific sections of the Master Agreement. *See* Rec. Doc. 1-2; Rec. Doc. 31-3. For

example, the Addendum notes that capitalized terms in each document will have the meaning as the same terms included in the Master Agreement. Rec. Doc. 1-2 at 1. The Addendum further regularly highlights different portions of the Master Agreement related to, for example, force majeure, default, payment schedules, and remedies allowed in the event of default–in addition to referencing the "terms and conditions" included in the Master Agreement. *Id*. at 2–3. These multiple references to the Master Agreement strongly suggest that the parties intended to incorporate that document into the Addendum. *See Gray & Co. Realtors v. Atl. Hous. Found., Inc*., 228 S.W.3d 431, 436 (Tex. App. 2007) (holding that trial court correctly concluded that a representation agreement implicitly incorporated a contract of sale because the latter document was "expressly referenced six times"). The same applies to Amendment No. 1, which likewise highlights various sections of the Master Agreement. *See* Rec. Doc. 31-3.

Cantium's contrary arguments are not persuasive. First, Cantium argues that the Addendum's reference to the Master Agreement in its title is insufficient to incorporate that document. Rec. Doc. 41 at 7–8. Cantium attacks a strawman. The Addendum and Amendment No. 1 reference the Master Agreement at least ten (10) times each, inviting the parties to consult the different terms included in the Master Agreement. *See Gray & Co. Realtors*, 228 S.W.3d at 436 (noting that a representation agreement "expressly invite[d]" the parties to that agreement to consult the terms of the incorporated contract of sale). Second, Cantium focuses on the Master Agreement's lack of "explicit and all-encompassing language which incorporates the entire [Master Agreement]." Rec. Doc. 41 at 8. Such language is unnecessary. *Al Rushaid*, 757 F.3d at 420 (noting that a document can be incorporated "even in the absence of specific language of incorporation").

Cantium continues by arguing that "the Addendum expressly limits any incorporation to only selected 'capitalized terms' in the Master Agreement[.]" Rec. Doc. 41 at 8. But that is not correct. As noted, the Addendum and Amendment No. 1 reference several other sections of the Master Agreement. For example, the Addendum states that "Lessor elects to terminate this Addendum for any un-remedied Event of Default caused by Lessee (to the extent any such remedy is allowed pursuant to the Master Agreement or this Addendum)." Rec. Doc. 1-2 at 2. Necessarily, the parties contemplated that the remedies included in the Master Agreement would be incorporated into the Addendum. There are other such provisions like this. Finally, Cantium contends that because the Addendum is silent about arbitration, and mandates that conflicts between the Addendum and Master Agreement shall be resolved in the Addendum's favor, that arbitration is not required. Rec. Doc. 41 at 20–21. This argument is not convincing. It is more likely that the Addendum's silence about arbitration confirms, rather than conflicts with, the Master Agreement's arbitration clause.

*2. Validity and Enforceability of the Arbitration Clause*

The court must decide, first, "whether there is a valid agreement to arbitrate," and second, "whether the current dispute falls within the scope of a valid agreement." *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013). The Court has determined that Cantium is bound to a valid arbitration agreement. The current dispute also falls within the scope of the arbitration clause. The arbitration clause states that "[a]ll disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Court of Arbitration (ICC)…from time to time in force, which Rules are deemed to be incorporated by reference into this Agreement." Rec. Doc. 1-3 at 10. Because Cantium's declaratory judgment action against GTC is based on the notice requirement in the Addendum, which itself incorporates

the Master Agreement, it concerns a "dispute[] arising out of or in connection with this Agreement" and must be arbitrated. Rec. Doc. 1 at 15; Rec. Doc. 1-2 at 3.[2]

Further, Cantium's assertion that it is not subject to the Master Agreement's arbitration clause it itself an arbitrable dispute. The Master Agreement indisputably incorporates by reference the "Rules of Arbitration of the International Court of Arbitration (ICC)." Rec. Doc. 1-3 at 10. And the "express adoption of these rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co*., 687 F.3d 671, 675 (5th Cir. 2012) (citing approvingly *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989), which reached the same result under the similar ICC Rules). ICC Article 7(1) provides that "if any party raises one or more pleas concerning the existence, validity, or scope of the arbitration agreement…the arbitral tribunal shall decide directly any question of jurisdiction[.]" ICC Rules of Arbitration, art. 7(1) (2026). Because of the Master Agreement's incorporation of the ICC Rules, Cantium's challenge to the arbitrability of the dispute must be arbitrated.

Finally, because the issues in the above-captioned matter are "referable to arbitration under an agreement in writing for such arbitration," the Court must stay the above-captioned matter. 9 U.S.C. § 3. The use of the word "shall" in Section 3 of the FAA "creates an obligation impervious to judicial discretion." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (citing 9 U.S.C. § 3).

New Orleans, Louisiana, this 1st day of June 2026

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[2] Cantium additionally argues that the Master Agreement's arbitration clause is unenforceable because under Texas and Louisiana law, an arbitration clause will be found to be invalid and unenforceable if "it binds one party to arbitrate, while allowing the other to choose whether to arbitrate." Rec. Doc. 41 at 21. The problem is that the Master Agreement's arbitration clause applies to "*all* disputes arising out of or in connection with" the Master Agreement and does not carve out a forum exception for GTC as opposed to any other party. Cantium refers specifically to Section 21 of the Master Agreement, which does not concern forums but instead remedies in the event of default. *See* Rec. Doc. 41 at 21, Rec. Doc. 1-3 at 7.